**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KATIE DAVIS,<br><br>Plaintiff,<br><br>v.<br><br>ALLY BANK,<br><br>Defendant. | Civil Action No. 25-02274 (GC) (JBD)<br><br>**OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Defendant Ally Bank's Motion for Summary Judgment. (ECF No. 48.) *Pro se* Plaintiff Katie Davis opposed the Motion, and Defendant replied. (ECF Nos. 53, 57.) Plaintiff also filed a Motion for Leave to file a Sur-Reply, (ECF No. 58), which Defendant opposed, (ECF No. 61).[1] The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure (Rule) 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendant's Motion is **GRANTED**.

[1] The Court grants Plaintiff's Motion and will consider the sur-reply given Plaintiff's *pro se* status. *See Filippatos v. United States*, Civ. No. 23-02033, 2023 WL 8232948, at *1 n.1 (D.N.J. Nov. 28, 2023) (emphasis added) ("While a sur-reply is typically impermissible, given the leniency afforded to *pro se* litigants, the Court will consider the substance of the sur-reply." (citing L. Civ. R. 7.1)).

## I. BACKGROUND

### A. Factual Background[2]

Defendant Ally Bank is an indirect subsidiary of Ally Financial, Inc. and purchases retail installment sales contracts (RISCs) and leases from auto dealers. (ECF No. 51 ¶¶ 1, 3.) On June 11, 2022, Plaintiff purchased a 2022 Buick Encore bearing VIN KL4MMBS24NB116937 (the Vehicle) from Barlow Buick GMC (the Dealer) using financing provided by Defendant. (*Id.* ¶ 4.) When making this purchase, Plaintiff executed a RISC in which she agreed to make a down payment of $2,500.00 and eighty-four monthly installment payments of $402.62, beginning on July 26, 2022. (*Id.* ¶¶ 5, 25; ECF No. 51-1 at 11.)[3] The total amount financed by Plaintiff under this RISC was $25,965.32. (ECF No. 51-1 at 11.)

That same day, Plaintiff executed a second RISC in which she agreed to make a down payment of $1,000.00 and eighty-four monthly installment payments of $425.88, for a total financed amount of $27,465.32. (ECF No. 51-1 at 15.) The dispute in this case involves which RISC governs.

Defendant asserts that the second RISC is the operative agreement governing Plaintiff's financing terms. (ECF No. 51 ¶ 6.) Plaintiff contends that the second RISC is unenforceable because it was procured by fraud in that the Dealer misrepresented that it was "the same thing"

---

2 On a motion for summary judgment, the Court "draw[s] all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party." *Jaffal v. Dir. Newark N.J. Field Off. Immigr. & Customs Enf't*, 23 F.4th 275, 281 (3d Cir. 2022) (citation modified). Local Civil Rule 56.1(a) requires parties to furnish statements of material facts on motions for summary judgment. Defendant's Statement of Undisputed Material Facts (SOM) is filed at ECF Nos. 50 and 51. For ease of reference, the Court will cite to ECF No. 51. Plaintiff's Response to Defendant's SOM is found at ECF No. 53-1.

3 Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

and that Plaintiff simply had to "resign it." (ECF No. 51-3 at 29:15-18.)[4] Plaintiff contends that she did not "knowingly agree to those changes and relied on the Dealer's representation that no substantive terms had been altered." (ECF No. 53 at 2; ECF No. 53-1 ¶¶ 6-7.) It is undisputed that the second RISC was assigned to Defendant. (ECF No. 51 ¶ 7; ECF No. 53-1 ¶ 7.)

On July 11, 2022, Defendant sent Plaintiff a letter informing her that she had been assigned a new agreement number. (ECF No. 51 ¶ 16; ECF No. 51-1 at 21.) Plaintiff's original agreement number ended in -5721, and her new agreement number ended in -5762. (ECF No. 51 ¶ 16; ECF No. 51-1 at 21.) Plaintiff was given a new agreement number because the first RISC had been cancelled and replaced by the second RISC. (ECF No. 51 ¶ 15.) The letter was sent to Plaintiff's home in Manahawkin, New Jersey. (*Id.* ¶ 16.) Plaintiff maintains that she does not recall receiving the letter. (*Id.*; ECF No. 51 ¶ 16.)

Defendant sent Plaintiff a billing statement each month beginning in July 2022, with Plaintiff receiving two billing statements the first month: one which reflected her old agreement number ending in -5721 with a monthly amount due of $402.62, and a second statement which reflected the new agreement number ending in -5762 with a monthly amount due of $425.88. (ECF No. 51 ¶ 17; ECF No. 51-1 at 23 (July 2022 billing statement for -5721); *id.* at 25 (July 2022 billing statement for -5762).) After July 2022, all correspondence to Plaintiff reflected the -5762 agreement number. (ECF No. 51 ¶ 18.) On July 22, 2022, Plaintiff made her first payment in the amount of $403.00. (*Id.* ¶ 26.) On September 12, 2022, Plaintiff made a second payment of $403.00. (*Id.*) On September 21, 2022, Plaintiff made a payment of $494.07, consisting of

---

4 Page numbers for citations to deposition transcripts refer to the internal page and line numbers stamped by the court reporter rather than the page numbers stamped by the Court's e-filing system.

$419.74 in principal, $51.90 in finance charges, and $22.43 in late charges.[5] (*Id.*; ECF No. 51-1 at 77 (payment history).) Plaintiff's first payment of $425.88, the monthly payment amount specified in the second RISC, (ECF No. 51-1 at 15), was made on October 25, 2022, (ECF No. 51 ¶ 26).

Plaintiff twice contacted Defendant—first on January 23, 2023 and again on June 21, 2023—inquiring as to why she had two account numbers. (*Id.* ¶¶ 19-20.) Plaintiff was advised on both dates that the two account numbers were the result of the cancellation of the first RISC.[6] (*Id.*)

Plaintiff made payments of $425.88 from November 2023 through August 2024,[7] with August 5, 2024, marking Plaintiff's last payment to Defendant.[8] (*See* ECF No. 51 ¶¶ 27, 35; ECF No. 51-1 at 77.) On September 12, 2024, Plaintiff sent Defendant a letter requesting that Defendant

---

5 While Defendant's SOM states that "[o]n September 21, 2022, Plaintiff made a payment of $419.74," (ECF No. 51 ¶ 26), the cited payment history confirms that Plaintiff's September 21, 2022 payment was for $494.07, and the specified principal and charge amounts total $494.07 (ECF No. 51-1 at 77).

6 Plaintiff's inquiry and Defendant's response were memorialized in an electronic note placed on Plaintiff's account. (*See* ECF No. 51-1 ¶ 24, *id.* at 74.)

7 Plaintiff's payment history for the account number ending in -5762 reflects an inconsistent pattern of payments. On certain occasions, Plaintiff paid more than the $425.88 monthly payment amount set forth in the second RISC; in other months, she paid far less. (ECF No. 51-1 at 77, *Compare* April 16, 2023 payment of $518.29, *with* September 8, 2023 payment of $200.00, *and* September 27, 2023 payment of $134.00.)

8 Plaintiff disputes Defendant's statement that it has received no payments from Plaintiff since August 2024, (ECF No. 53-1 ¶ 35), but focuses the dispute on her argument that she did not need to make payments after challenging the validity of the second RISC, stating that, "[a]ny alleged nonpayment occurred during an unresolved dispute arising from Defendant's reliance on a contract procured through fraudulent misrepresentation and inconsistent with Plaintiff's understanding of the agreement." However, Plaintiff testified at her deposition that the payment history provided by Defendant—which shows the last payment being made in August 2024, (ECF No. 51-1 at 77)—accurately reflects all payments Plaintiff made to Defendant. (ECF No. 51-3 at 68:20-24.)

"rectify a billing error on the current alleged debt that has been erroneously assigned TWO account numbers, ending in -5721 and -5762," and further requesting that Defendant furnish "all documentary evidence" for who funded the account and whose obligation it was to pay the debt. (ECF No. 8 at 52; ECF No 51 ¶ 29.) On October 1, 2024, Defendant provided Plaintiff with her payment history for the account number ending in -5762. (ECF No. 51 ¶ 30.) Plaintiff subsequently sent Defendant a "cease and desist" letter on October 22, 2024, wherein she reiterated her previous request for documentary evidence and a detailed accounting of "when, how, and why" two accounts were created for her car loan. (ECF No. 8 at 53; ECF No. 51 ¶ 32.) Plaintiff further stated that she could not pay her monthly car payment until she received the requested information. (ECF No. 8 at 53.) In response to Plaintiff's second letter, Defendant provided Plaintiff with her payment history for the account number ending in -5762 on November 25, 2024. (ECF No. 51 ¶ 33.)

**B. Procedural Background**

Defendant repossessed Plaintiff's car on December 9, 2024, for failure to pay. (*Id.* ¶ 36.) On December 12, 2024, Plaintiff filed a Complaint against Defendant in the Superior Court of New Jersey, Ocean County. (ECF No. 8 at 49-51.) *See also Davis v. Ally Bank*, No. OCN-DC-017714-24 (N.J. Sup. Ct. Law Div. Dec. 12, 2024). Plaintiff then filed an emergent application seeking the return of her car, and the state court granted Plaintiff's application on December 20, 2024, ordering Defendant to return the car to Plaintiff.[9] (ECF No. 8 at 6.) On March 17, 2025, Defendant repossessed Plaintiff's car again because Plaintiff's account remained in default. (ECF No. 51 ¶ 38.) On March 24, 2025, the state court issued an order ordering Defendant to return the

---

[9] According to the state court's Order, Plaintiff's emergent application seeking the return of her car was granted "as both unopposed and on the merits." (ECF No. 8 at 6.)

car to Plaintiff, (ECF No. 8 at 17-18), which Defendant did the next day, (ECF No. 51 ¶ 39). The state court also ordered Defendant to advise Plaintiff as to where and how payments were to be made, ordered Plaintiff to come current with her current payments, and noted that "[t]he parties [would] discuss a settlement of this matter. (ECF No. 8 at 17-18.)[10]

On April 3, 2025,[11] Defendant removed the matter to this court pursuant to 28 U.S.C. § 1331.[12] (*See* ECF No. 1 ¶ 5.) On May 12, 2025, Plaintiff filed an Amended Complaint alleging violations of the Fair Credit Billing Act (FCBA), 15 U.S.C. § 1666 *et seq.* and 12 C.F.R. § 1026.13 (Count One); New Jersey Consumer Fraud Act (CFA), N.J. Stat. Ann. § 56:8-1 *et seq.* (Count Two); common law fraud (Count Three); and the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* (Count Four). (*See* ECF No. 12 ¶¶ 10-13.) Although not pled as separate counts, Plaintiff also alleges that Defendant violated the Commodities Exchange Act (CEA), 7 U.S.C. § 6, *et seq.* (*Id.* ¶ 8.). Plaintiff seeks compensatory damages, treble damages under the CFA, statutory and punitive damages under the FCBA and FDCPA, damages for severe emotional distress, costs, and "[c]ancellation of the alleged debt." (*Id.* at 3-4.)

---

[10] The Court notes that there were a series of subsequent orders entered by the state court in the state court matter. On April 2, 2025, Plaintiff was ordered to make all car payments to the Court's escrow account and prohibited Defendant from repossessing Plaintiff's car. (ECF No. 8 at 48.)

[11] In their notice of removal, Defendants state that they were not served with a copy of Plaintiff's Complaint until March 27, 2025. (ECF No. 1 ¶ 10; *see also* ECF No. 8 at 18 (state court's March 24, 2025 Order directing Plaintiff to "perfect service upon the Defendant").) "A defendant seeking removal of an action initiated in a state court must file a notice of removal with the district court within thirty days of service of the complaint upon the defendant." *Orlick v. J.D. Caton & Son, Inc.*, 144 F. Supp. 2d 337, 340-41 (D.N.J. 2001).

[12] Plaintiff filed a motion to remand, but subsequently withdrew her motion. (ECF Nos. 4, 18.) The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.

On July 16, 2025, Defendant answered the Amended Complaint and asserted two counterclaims, (ECF No. 26 at 1-5 (Answer), *id.* at 5-9 (Counterclaim)), for breach of contract, (Counterclaim ¶¶ 12-19 (Counterclaim One)), and replevin, (*id.* ¶¶ 20-25 (Counterclaim Two)).[13] Defendant seeks judgment in the amount $23,056.22—the outstanding balance due as of July 8, 2025—and fees, plus interest of 7.74%—the annual percentage rate (APR) specified in the RISC—from August 5, 2024 through present, possession of the Vehicle, expenses of collection and enforcement, and attorneys' fees and costs. (*Id.* ¶¶ 11, 18; *id.* at 9.)

The parties engaged in discovery and on March 17, 2026, Defendant moved for summary judgment on all counts, including its counterclaims for breach of contract and replevin. (ECF No. 48.) The Motion is fully briefed and ripe for adjudication by the Court.

## II. <u>LEGAL STANDARD</u>

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* When deciding the existence of a genuine dispute of material fact, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. "[I]nferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel*

[13] Defendant first answered the Amended Complaint and asserted its counterclaims on May 27, 2026, (ECF No. 15), but was granted leave to file an amended counterclaim on July 2, 2025, (ECF No. 25), which it then filed on July 16, 2025, (ECF No. 26).

*Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983). A court must grant summary judgment against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "In the face of a properly supported summary judgment motion, the nonmovant's burden is rigorous: the party 'must point to concrete evidence in the record'—mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment." *Roofer's Pension Fund v. Papa*, 687 F. Supp. 3d 604, 616 (D.N.J. 2023) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995)).

When a party is proceeding *pro se*, the court generally has the obligation to construe the pro se party's pleadings "liberally." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "'However, despite this liberal interpretation, the same standards for summary judgment apply to *pro se* litigants.'" *Kwanzaa v. Tell*, Civ. No. 19-16052, 2024 WL 2991194, at *5 (D.N.J. June 14, 2024), *appeal dismissed,* Civ. No. 24-2273, 2024 WL 5316593 (3d Cir. Sept. 25, 2024) (quoting *Watson v. Phila. Hous. Auth.*, 629 F. Supp. 2d 481, 485 (E.D. Pa. 2009)). "In other words, the party opposing summary judgment, whether or not they are *pro se*, 'must present evidence, through affidavits, depositions, or admissions on file, to show that there is a genuine issue for trial.'" *Id.* (quoting *Watson*, 629 F. Supp. 2d at 485). A plaintiff may also not withstand summary judgment by resting on mere allegations in the pleadings alone. *See Williams v. Oppman*, Civ. No. 20-00663, 2023 WL 3645712, at *3 (W.D. Pa. May 25, 2023), *aff'd sub nom. Williams v. Wetzel*, Civ. No. 23-2162, 2024 WL 1427582 (3d Cir. Apr. 3, 2024) (holding that even "[a] *pro se* plaintiff may not . . . rely solely on [its] complaint to defeat a summary judgment motion").

## III. DISCUSSION

### A. FCBA Claim (Count I)

In Plaintiff's Amended Complaint, she alleges that she "sent certified notices of billing error[s]" to Defendant, and that "Defendant failed to respond within 30 days," in violation of the FCBA. (ECF No. 12 ¶¶ 6-7, 9-10.) Defendant argues that it is entitled to summary judgment on this claim because the FCBA does not apply to Plaintiff's car loan. (ECF No. 49 at 12-17.) Plaintiff fails to directly address Defendant's argument but broadly argues that "Defendant's billing and accounting were based on an invalid contract and were never resolved."[14] (ECF No. 53 at 3.)

The FCBA, 15 U.S.C. § 1666 *et seq.*, is enforced through the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*, and its implementing Regulation Z, 12 C.F.R. § 1026.1 *et seq. Conti v. Bank of Am., N.A.*, No. 22-06615, 2024 WL 4986701, at *3 (D.N.J. Dec. 5, 2024). The purpose of the TILA is "to assure a meaningful disclosure of credit terms," 15 U.S.C. § 1601(a), and "put the consumer on an equal footing with the lender," *Milledge v. Chase Bank, USA, N.A.*, Civ. No. 07-

[14] In its reply brief, Defendant argues that Plaintiff has abandoned her federal claims under the FCBA, FDCPA, and CEA because she does not address Defendant's arguments regarding these claims in her opposition brief. (ECF No. 57 at 8-10.) The Court disagrees. The Court credits Plaintiff's sur-reply, *Filippatos*, 2023 WL 8232948, at *1 n.1, in which she clearly states that she does not abandon her claims and instead focused her opposition brief "on the dispositive factual issue underlying all claims—whether Defendant relied on and enforced a contract that Plaintiff did not knowingly accept," (ECF No. 58-1 at 1). Furthermore, this Court agrees with others that have held that *pro se* plaintiffs do not abandon their claims when they oppose a defendant's motion, even when the plaintiff's opposition may have lacked specificity or clarity. *See Brown v. Byrd*, Civ. No. 00-3118, 2000 WL 1780234, at *5 (E.D. Pa. Dec. 1, 2000), aff'd, 276 F.3d 576 (3d Cir. 2001) ("[The plaintiff's] response to the defendants' motion for summary judgment is confined to his complaints of racial discrimination; supervisory liability and failure to train; and his contention that he exhausted his administrative remedies regarding the racial discrimination. Given [the plaintiff's] pro se status, the court does not assume that he abandons his other claims"); *Hadidi v. City of Shamokin*, Civ. No. 22-00066, 2023 WL 11983217, at *14 (M.D. Pa. Jan. 11, 2023), report and recommendation adopted, 2023 WL 11983215 (M.D. Pa. Apr. 17, 2023) ("Although [the plaintiff's] brief in opposition is not a model of clarity, she clearly opposes the defendants' motion to dismiss. And given that [the plaintiff] is pro se, the lack of clarity in her brief does not warrant deeming her to have abandoned her claims.").

4128, 2007 WL 4179847, at *2 (E.D. Pa. Nov. 26, 2007). As a result, the TILA specifies disclosure requirements for both open-end and closed-end credit transactions. *Compare* 15 U.S.C. § 1637, *and* 12 C.F.R. §§ 226.5-226.9 (TILA disclosure requirements for open-end credit), *with* 15 U.S.C. § 1638(a), *and* 12 C.F.R. § 226.18 (TILA disclosure requirements for closed-end credit). An open-end transaction is "'a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance,' such as a credit card." *Burress v. Freedom Mortg. Corp.*, Civ. No. 20-15242, 2021 WL 4059831, at *4 (D.N.J. Sept. 7, 2021) (quoting 15 U.S.C. § 1602(i)). Conversely, a closed-end transaction is one where "'the finance charge is divided into the term of the loan and incorporated into time payments,' like a mortgage or car loan." *Id.* (quoting *McAnaney v. Astoria Fin. Corp.*, Civ. No. 04-1101, 2008 WL 222524 at *4 (E.D.N.Y. Jan. 25, 2008)); *see also Puente v. Navy Fed. Credit Union (Puente II)*, Civ. No. 25-0417, 2025 WL 992690, at *4 (E.D. Pa. Apr. 2, 2025) ("A car loan . . . is a 'closed-end' loan under the TILA regulations.").

The FCBA was enacted as an amendment to the TILA and is a distinct provision. *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 433 (3d Cir. 2018). It builds on the broad purpose of TILA by requiring creditors to investigate and correct billing errors. *Id.* The FCBA specifically requires creditors to "investigate and correct any charges erroneously billed to a consumer's account if, within 60 days of the issuance of the statement containing those charges, the creditor receives written notice from the consumer of the alleged errors." *Burrell v. DFS Servs., LLC*, 753 F. Supp. 2d 438, 451 (D.N.J. 2010) (citing 15 U.S.C. § 1666(a)). A creditor "shall mail or deliver written acknowledgment to the consumer within 30 days of receiving a billing error notice." 12 C.F.R. § 1026.13(c)(1); *see also* 15 U.S.C. § 1666(a)(3)(A). Thereafter, and "within two billing cycles

but not later than ninety days after the consumer files his dispute, the creditor must either correct the consumer's account or conduct an investigation and explain in writing to the consumer why the original statement was correct." *Puente v. Navy Fed. Credit Union (Puente I)*, Civ. No. 25-0417, 2025 WL 408677, at *2 (E.D. Pa. Feb. 5, 2025) (citing 15 U.S.C. § 1666(a)(3)(B)(i)-(ii)); *see also* 12 C.F.R. § 1026.13(c)(2). However, unlike the broader TILA, the FCBA only applies to open-ended consumer credit transactions, and its protections do not extend to closed-end credit. *Gresham v. Ocwen Loan Servicing, LLC*, Civ. No. 17-203, 2018 WL 6599901, at *5 (D. Del. Dec. 17, 2018); *see also Puente I*, 2025 WL 408677, at *2. Plaintiff only asserts a claim under the FCBA, not under the TILA more broadly. (ECF No. 12 ¶¶ 6-7, 9-10.)

Here, the transaction at issue is Plaintiff's car loan. This is a closed-end credit transaction to which the FCBA does not apply. *Puente I*, 2025 WL 408677, at *2 ("Because [the plaintiff] alleges that the loan obligation at issue is a closed-end car loan, the provisions of the FCBA are inapplicable and [the plaintiff's] claim under that statute will be dismissed with prejudice."). As such, Defendant is entitled to summary judgment as a matter of law on Plaintiff's FCBA claim. *See Romanowski v. Trans Union, LLC*, Civ. No. 22-0428, 2023 WL 5807863, at *10 (N.D. Tex. Aug. 17, 2023), *report and recommendation adopted*, 2023 WL 5807845 (N.D. Tex. Sept. 7, 2023) ("Because there are no allegations that [the d]efendant provided [the p]laintiff an open-end credit loan or that his account with [the d]efendant constitutes an open-end credit transaction, his FCBA claim fails as a matter of law, and summary judgment should be granted *sua sponte* in favor of [the d]efendant on this claim.").

**B. FDCPA Claim (Count IV)**

Plaintiff brings a claim for violations under the FDCPA, namely sections 1692(g) and 1692(f). Plaintiff alleges that Defendant, acting as a debt collector, "failed to validate the debt after Plaintiff's notices and engaged in unlawful repossessions." (ECF No. 12 ¶ 13.) The FDCPA

authorizes lawsuits against debt collectors who engage in certain prohibited debt collection practices. 15 U.S.C. § 1692k(a). To establish a claim under the FDCPA, a plaintiff must allege that: (1) they are a consumer; (2) the defendant is a debt collector; (3) the plaintiff is challenging a defendant's attempt to collect a "debt," as defined under the FDCPA; and (4) the defendant violated the FDCPA in attempting to collect the debt. *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015).

Defendant contends that Plaintiff's FDCPA claim fails because Plaintiff does not establish that Defendant is a "debt collector." (ECF No. 49 at 28.) The Court agrees. Under the FDCPA, a "debt collector" is either (1) a person who uses an instrument of interstate commerce to engage in business, "the principal purpose of which is the collection of any debts" ("the principal purpose" definition); or (2) a person who "regularly collects or attempts to collect . . . debts owed or due . . . [to] another" (the "regularly collects" definition). *Cabrera v. Nazor*, Civ. No. 23-2745, 2024 WL 310523, at *6 (D.N.J. Jan. 25, 2024) (quoting 15 U.S.C. § 1692a(6)). The term does not encompass creditors who seek to recover their own debt. 15 U.S.C. § 1692a(6)(A) (stating that the term "debt collector" does not include "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor"); *see also Frazier v. Morristown Mem'l Hosp.*, 767 F. App'x 371, 375 (3d Cir. 2019) ("The FDCPA does not apply to creditors who collect their own debts; it applies only to debt collectors who collect debts owed to another." (citing 15 U.S.C. § 1692a(6)(A))); *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 87 (2017) (stating that under the FDCPA, "you have to attempt to collect debts owed *another* before you can ever qualify as a debt collector" (emphasis in original)); *Tepper v. Amos Fin., LLC*, 898 F.3d 364, 366 (3d Cir. 2018) ("Specifically excluded from the definition's reach are . . . a creditor's officers and employees collecting debts for the creditor, a company collecting debts only for its non-debt-

collector sister company, an entity collecting a debt it originated, and one collecting a debt it obtained that was not in default at the time of purchase." citing 15 U.S.C. § 1692a(6)(A), (B), (F))).

Plaintiff's single allegation that Defendant is a "debt collector," (ECF No. 12 ¶ 13), is insufficient to confer liability under the FDCPA. *Poltrock v. N.J. Auto. Accts. Mgmt. Co., Inc.*, Civ. No. 8-1999, 2008 WL 5416396, at *2 (D.N.J. Dec. 22, 2008). Plaintiff does not dispute that the second RISC was lawfully assigned to Defendant, (ECF No. 51 ¶ 7; ECF No. 53-1 ¶ 7; ECF No. 51-1 at 17 (RISC provisions).)[15] Furthermore, courts both in this District and beyond have consistently held that Defendant is not a "debt collector" under the FDCPA following the assignment of a loan. *See, e.g.*, *Grooms v. Ally Fin.*, Civ. No. 23-2285, 2023 WL 8251315, at *1 (3d Cir. Nov. 29, 2023) (affirming the district court's finding that Ally Bank was not a debt collector under the FDCPA where Ally's communications "concerned a debt owed to itself in connection with financing [plaintiff's] car"); *Walker v. Ally Bank*, Civ. No. 24-02203, 2025 WL 2994634, at *6 (C.D. Cal. Oct. 16, 2025) (finding that Ally Bank was not a debt collector under the FDCPA where Ally Bank was the assignee of the RISC and showing that Ally Servicing LLC serviced Plaintiff's account as the debt collector); *Hayward v. USAA Fed. Sav. Bank*, Civ. No. 24-5602, 2024 WL 5108446, at *7 (E.D. Pa. Dec. 13, 2024) (collecting cases) (finding that Ally was not a debt collector when attempting to collect a debt owed to itself in connection with financing plaintiff's car); *Lewis v. Ally Fin., Inc.*, Civ. No. 21-3839, 2022 WL 1286587, at *6 (N.D. Ga. Feb. 9, 2022), *report and recommendation adopted*, 2022 WL 1286554 (N.D. Ga. Mar. 22, 2022) (concluding that Ally was not a debt collector under the FDCPA where the plaintiff alleged that it

---

[15] The RISCs state that the "[s]eller assigns its interest in this contract to ALLY CAPITAL," (ECF No. 51-1 at 13, 17), and Ally Capital Corp. is the registered name for Defendant to do business in the State of New Jersey, (ECF No. 51 ¶ 2; ECF No. 53-1 ¶ 2).

was "collecting or attempting to collect on a debt Plaintiff owed to it on her car loan, not a debt owed to another").

Moreover, at the time the RISCs were assigned to Defendant in June 2022, Plaintiff was not in default of her loan as her monthly payments were not set to begin until July 2022. (ECF No. 51-1 at 11, 13 (first RISC); *id.* at 15, 17 (second RISC).) *See Tepper*, 898 F.3d at 366 (specifically excluding from the definition of a debt collector an individual or entity "collecting a debt it obtained that was *not in default* at the time of purchase" (emphasis added) (citing 15 U.S.C. § 1692a(6)(A), (B), (F))).

Even if Defendant were a debt collector under the FDCPA, its repossessions of the Vehicle were not unlawful. It is undisputed that regardless of which RISC applied, both allowed for repossession upon default, (ECF No. 51-1 at 12 (first RISC); *id.* at 16 (second RISC); ECF No. 51 ¶¶ 9-11; ECF No. 53-1 ¶¶ 9-11), the RISC's definition of "default" included failing to make payment on time, (ECF No. 51-1 at 16), Plaintiff has not made any payments since August 2024, (ECF No. 51-1 at 77 (reflecting last payment on August 5, 2024); ECF No. 51-3 at 68:20-24 (Plaintiff agreeing that all her payments to Defendant are reflected in this payment history)), and that Defendant's repossessions of Plaintiff's vehicle were for lack of payment, (ECF No. 51 ¶¶ 35-38; ECF No. 53-1 ¶¶ 35-38 (Plaintiff only disputes the propriety of repossession "because the billing dispute remained unresolved," and cites to no exhibits or affidavits in support)).

Because the Court finds that Defendant is not a debt collector as defined under the FDCPA and is thus not subject to the Act, summary judgment is warranted in favor of Defendant as a matter of law. *See Celotex*, 477 U.S. at 322 (summary judgment is appropriate where the non-movant fails to make a showing sufficient to establish an element essential to its case).

### C. CEA Claim

Plaintiff also alleges that Defendant violated the CEA by "rel[ying] on misleading or invalid contracts with differing terms." (ECF No. 12 ¶ 8.) Defendant argues that it is entitled to summary judgment because this claim fails as a matter of law; Plaintiff's purchase of a vehicle does not involve a contract for the future delivery of a commodity, rendering the CEA inapplicable, and in the alternative, there is no private right of action under the CEA provision invoked by Plaintiff. (ECF No. 49 at 17-19.) Plaintiff does not specifically respond to Defendant's argument, but instead broadly argues that "Defendant's motion depends entirely on the enforceability of the second RISC," which she contends is unenforceable "because it was procured through fraudulent misrepresentation." (ECF No. 53 at 2.)

The CEA "regulates the conduct of participants in commodity futures markets," which "allow producers and purchasers of agricultural commodities and other products to hedge against the risk of future price movements[.]" *Commodity Futures Trading Comm'n v. Equity Fin. Grp. LLC*, 572 F.3d 150, 154-55 (3d Cir. 2009) (citing 7 U.S.C. § 1 *et seq.*). The CEA defines a "commodity" as agricultural products (such as wheat, cotton, rice, corn, oats, etc.) as well as "all other goods and articles . . . and all services, rights, and interests . . . in which *contracts for future delivery* are presently or in the future dealt in." 7 U.S.C. § 1a(9) (emphasis added). Neither the RISC nor the car loan is a "commodity" under the CEA, nor are the transactions at issue "commodity futures" or "options on futures" that the CEA seeks to regulate. *See Cornwall Mgmt. Ltd. v. Thor United Corp.*, Civ. No. 12-8551, 2013 WL 5548812, at *2 (S.D.N.Y. Oct. 8, 2013) ("Neither the loans nor the real estate is a commodity" under the CEA); *Commodity Futures Trading Comm'n v. Rosenberg*, 85 F. Supp. 2d 424, 429-30 (D.N.J. 2000) (explaining that the CEA is "a comprehensive statutory scheme governing the trading of commodity futures and options on futures" and "[c]ommodity futures trading involves contracts of sale for a specific quantity of a

commodity at a set price to be delivered at some future date."). As such, the CEA cannot apply and the Court must enter summary judgment in favor of Defendant on this claim.

**D. State Law Claims (Counts II and III)**

In addition to the above federal claims, Plaintiff brings two state law claims against Defendant for violations of the CFA (Count II) and common law fraud (Count III). (ECF No. 12 ¶¶ 11-12.) Defendant argues that summary judgment must be entered in its favor on the CFA claim as Plaintiff has failed to show that Defendant engaged in any alleged unconscionable practices under the Act, (ECF No. 49 at 20-25), and on the common law fraud claim as Plaintiff has failed to show that the RISC or debt were invalid, (*id.* at 25-26). Again, Plaintiff does not specifically respond to these arguments but generally argues that "[b]ecause Defendant's motion relies on that invalid agreement to establish default and justify repossession, and because Plaintiff's sworn testimony establishes a genuine dispute regarding the circumstances under which the second contract was obtained, summary judgment must be denied." (ECF No. 53 at 1.)

It is within a court's discretion to decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367 when the court has resolved all claims over which it has original jurisdiction. *Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 567 (3d Cir. 2017). A court's decision whether to continue to exercise supplemental jurisdiction is based on considerations of judicial economy, convenience, and fairness to the parties. *Phillips v. Nw. Reg'l Commc'ns*, 669 F. Supp. 2d 555, 577 (W.D. Pa. 2009), *aff'd sub nom. Phillips ex rel. Est. of Phillips v. Nw. Reg'l Commc'ns*, 391 F. App'x 160 (3d Cir. 2010) (quoting *Cindrich v. Fisher,* 341 F. App'x 780, 789 (3d Cir. 2009)). Here, while the Court has resolved all federal law claims, the considerations weigh in favor of retaining jurisdiction on Plaintiff's state law claims. The parties conducted discovery before this Court which, as discussed below, confirms there are no genuine disputes of material fact preventing resolution of these claims. As such, judicial economy supports deciding these claims now rather than declining

to exercise jurisdiction. *See id* (retaining jurisdiction over state law claims "where the [c]ourt is thoroughly conversant with the facts and history of the case" because "it seems clear that judicial economy would weigh in favor of this [c]ourt retaining jurisdiction").

***1. CFA Claim (Count II)***

"To state a CFA claim, a plaintiff must allege three elements: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." *Int'l Union of Operating Eng'rs Loc. No. 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1086 (N.J. 2007) (citation modified). "Unlawful conduct" can include affirmative acts, knowing omissions, or regulatory violations. *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994). Plaintiff alleges that Defendant violated the CFA by engaging in unconscionable commercial practices in violation of N.J. Stat. Ann. § 56:8-2[16] through its "misleading contracts, failure to disclose the loan assignment, and wrongful repossessions." (ECF No. 12 ¶¶ 8, 11.) "In consumer goods transactions such as those involved in this case, 'unconscionability must be equated with the concepts of deception, fraud, false pretense, misrepresentation, concealment and the like, which are stamped unlawful under N.J.S.A. 56:8-2.'" *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 595 (D.N.J. 2016) (quoting *Palmucci v. Brunswick Corp.*, 710 A.2d 1045, 1049 (N.J. Super. Ct. App. Div. 1998)) (citation modified).

Here, Plaintiff has not raised a genuine dispute of material fact as to whether Defendant engaged in unconscionable practices under the CFA. First, Plaintiff contends that the second RISC is "misleading or invalid," (ECF No. 12 ¶¶ 8, 11), as Plaintiff "signed the second document only because the Dealer represented it was a clerical correction of the same agreement" and she "was

[16] Plaintiff also cites to N.J. Stat. Ann. § 56:8-2.9, (ECF No. 12 ¶ 8), but this section does not apply as it specifically focuses on "Misrepresentation of identity of food in menus or advertisements of eating establishments" which is not at issue in this matter.

not informed that it contained materially different financial terms" than the first RISC, (ECF No. 53-1 ¶ 6). There are no facts in the record from which a reasonable jury could find that the second RISC is invalid.

Plaintiff testified that she signed the first and second RISCs. (ECF No. 51-3 at 27:10-12.) However, Plaintiff testified that after she left the dealership:

> [The dealer] called and said there was a mistake on the contract. Can you come back? And I said, I can come back tomorrow. So I went back the next day. I had my autistic son with me. And he said, It's the same thing. You just got to resign it. So I signed it. I didn't read it over. And that was the one that said 1,000.

(ECF No. 51-3 at 29:11-18.) Plaintiff also attached a Certification to her opposition brief attesting to the same facts. (ECF No. 53-2 at ¶¶ 3-6, 20-21.) Ordinarily the Court must credit such testimony, as "[a]t summary judgment the [c]ourt may not make credibility determinations and must accept [the p]laintiff's somewhat unlikely version of events." *Walker v. Heller*, Civ. No. 15-580, 2017 WL 4786557, at *7 (D.N.J. Oct. 24, 2017). However, Plaintiff's testimony is not the only evidence before the Court. Where deposition testimony is contradicted by other evidence, the court need not accept that testimony as true on summary judgment. *McCready v. Unity Sober Living Homes, LLC*, Civ. No. 24-2226, 2025 WL 1953274, at *6 (E.D. Pa. July 16, 2025) ("When testimony is 'blatantly contradicted by the record,' [the court] 'should not adopt that version of the facts for the purposes of . . . summary judgment.'" (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007))); *cf. Reich v. Schering Corp.*, Civ. No. 07-1508, 2009 WL 3230361, at *10 (D.N.J. Sep. 30, 2009), *aff'd sub nom. Reich v. Schering Plough Corp.*, 399 F. App'x 762 (3d Cir. 2010) ("For purposes of ruling on a motion for summary judgment, deposition testimony and affidavits, if not contradicted by other evidence, may be accepted as true without an assessment of the credibility of the witness." (citation modified)). The record before the Court contradicts Plaintiff's testimony and indicates that the second RISC is valid and was not procured through fraud.

Plaintiff does not dispute "that that debt is valid in the sense that it allowed [her] to purchase the vehicle[.]" (ECF No. 51-3 at 63:2-8.) Both RISCs were signed on June 11, 2022, the date on which the Vehicle was purchased. (ECF No. 51-1 at 13 (first RISC), 17 (second RISC); ECF No. 51 ¶ 4; ECF No. 53-1 ¶ 4.) Also, Plaintiff's bank statements show Plaintiff issued a check to "Barlow" for $1,000.00 on June 11, 2022, (ECF No. 51-2 at 4, 7), and that the second RISC specified a down payment of $1,000.00, (ECF No. 51 ¶ 4; ECF No. 53-1 ¶ 4; ECF No. 51-1 at 15). Plaintiff maintains that she made a down payment of $2,500.00 by issuing one check in the amount of $1,000.00 and paying the remaining $1,500.00 in cash; however, Plaintiff testified that she has no record of this cash payment, and her bank records do not reflect such a withdrawal. (ECF No. 51-3 at 29:19-24; ECF No. 51-2.)

Plaintiff testified that she first learned of the two account numbers in September 2024, (ECF No. 51-3 at 38:18-23), and was unaware of any issue before that point. However, this allegation is belied by the record. The Dealer submitted a "Flat Cancellation Request Form" to Defendant, giving the reason that "[w]rong deposit amount is listed on contract should have been $1000 as approved not $2500," and Defendant approved the request on June 24, 2022. (ECF No. 51-1 at 19.) As a result, Defendant notified Plaintiff of her new agreement number on July 11, 2022. (ECF No. 51-1 at 21.) Plaintiff does not recall receiving this letter, but otherwise agreed she did not "have any reason to dispute that it was sent to [her] at 92 David Drive." (ECF No. 51-3 at 40:10-13.) In July 2022, two billing statements—one with the first -5721 account number, and the second with the -5762 account number—were sent to Plaintiff's address, (ECF No. 51-1 at 23, 25), and all billing statements thereafter from August 2022 through October 2024 included the -5762 account number, (*id.* at 27-71). Furthermore, Plaintiff called Defendant in January and June 2023 asking why she had two account numbers and Defendant advised her it was because her

first agreement was cancelled due to an error. (ECF No. 51-1 at 74.) Plaintiff's payment history shows she made monthly payments of $425.88—the amount specified by the second RISC, (ECF No. 51-1 at 15)—in October 2022, November 2023 through April 2024, and June to August 2024, (*id.* at 77). Given the evidence before the Court, Plaintiff has not established a genuine dispute of material fact that the second RISC was valid or that she was misled into signing the agreement. *See Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) (holding that "'a bare but sworn assertion of a claimant's lack of knowledge will not suffice to create a material dispute of fact where that assertion is impeached by a well supported showing to the contrary'" (quoting *United States v. 717 S. Woodward St.,* 2 F.3d 529, 533 (3d Cir. 1993)); *Vu v. Kott*, 827 F. Supp. 3d 578, 589 (E.D. Pa. 2026) ("No other evidence supports [the plaintiff's] allegation that [the defendant] made these comments. [The plaintiff's] testimony, without more, is not sufficient to create a genuine issue of material fact."), *appeal docketed*, Civ. No. 26-1738 (3d Cir. Apr. 3, 2026).

Plaintiff next alleges Defendant violated the CFA by failing to disclose the loan assignment. (ECF No. 12 ¶ 11.) However, it is undisputed that the second RISC was assigned to Defendant, (ECF No. 51 ¶ 7; ECF No. 53-1 ¶ 7 (only disputing the assignment "to the extent Defendant relies on the second RISC" as she contends it is invalid); ECF No. 51-1 at 17), and Plaintiff knew that her purchase of the vehicle was financed by Defendant, (ECF No. 51 ¶ 4; ECF No. 53-1 ¶ 4). Lastly, Plaintiff alleges that Defendant committed an "unconscionable commercial practice" in violation of the CFA by wrongfully repossessing her vehicle. (ECF No. 12 ¶ 11.) But as discussed previously, (*see supra* Part III.B), the second RISC defines "default" as failing to make payment on time, giving false, incomplete, or misleading information during credit application," starting a bankruptcy proceeding, or breaking "any agreements in this contract" and explicitly provides that

"[i]f you default, we may take (repossess) the vehicle from you[.]" (ECF No. 51-1 at 16.) Plaintiff has not made any payments since August 2024, making her in default under the RISC. (ECF No. 51-1 at 77 (reflecting last payment on August 5, 2024); ECF No. 51-3 at 68:20-24 (Plaintiff agreeing that all her payments to Defendant are reflected in this payment history).) As such, Defendant's repossessions of the Vehicle in December 2024 and March 2025 were permissible as a matter of law. Because Plaintiff has not shown a genuine dispute of material fact regarding the occurrence of any of Defendant's alleged unconscionable acts under the CFA, summary judgment is warranted on this claim in Defendant's favor.

***2. Common Law Fraud Claim (Count III)***

Plaintiff also alleges that Defendant engaged in fraudulent misrepresentation through its "use of invalid contracts and failure to validate the debt." (ECF No. 12 ¶ 12.) In New Jersey:

> To establish common-law fraud, a plaintiff must prove: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."

*Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 260 (N.J. 2005) (quoting *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997).). Defendant argues that summary judgment in its favor is warranted as Plaintiff has not shown any material misrepresentation occurred. (ECF No. 49 at 26.) The Court agrees.

The "material misrepresentation" element of common law fraud is similar to the CFA's requirement "in that the plaintiff must claim that the defendant engaged in unlawful conduct that includes employing a misrepresentation or omitting a material fact." *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 294-95 (3d Cir. 2014). For the reasons discussed above, (*see supra* Part III.D.1), the Court holds that the second RISC and debt are valid and no misrepresentation occurred. Although Plaintiff testified that she was misled about the second RISC, (ECF No. 51-3

at 29:11-18), the Court cannot credit this testimony in light of the volume of contradictory evidence in the record. *See, e.g.*, *Reich*, 2009 WL 3230361, at *10; *McCready*, 2025 WL 1953274, at *6; *Gonzalez*, 678 F.3d at 263; *Vu*, 827 F. Supp. 3d at 589. Because there is no genuine dispute regarding whether a material misrepresentation occurred, summary judgment must be granted in Defendant's favor.

**E. Defendant's Counterclaims**

Defendant also seeks summary judgment on its counterclaims for breach of contract and replevin. (ECF No. 49 at 32-35.) Specifically, Defendant argues that Plaintiff breached her contractual obligations to Defendant by failing to make timely payments, (*id.* at 32-34), and it is entitled to take possession of the Vehicle under the terms of the RISC in light of Plaintiff's default, (*id.* at 35). Plaintiff does not respond to this argument in her opposition, but denied Defendant's counterclaims in her Answer. (ECF No. 29 at 3-4.)

***1. Breach of Contract***

"To establish a breach of contract claim, [the p]laintiff must allege that '(1) a contract [existed] between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations.'" *Michael E. Panebianco ACC Fam. Tr. v. Vet Cellect, LLC*, Civ. No. 23-01943, 2025 WL 624649, at *3 (D.N.J. Feb. 26, 2025) (second alteration in original) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007)). As the Court previously concluded, the second RISC is a valid contract between the parties. (*See supra* Part III.D.1.) Plaintiff has not made payments as required by the contract since August 2024, (ECF No. 51-1 at 77; ECF No. 51-3 at 68:20-24), and "failure to make contractually required payments constitutes a material breach." *Resurge, LLC v. L'Or De Seraphine, LLC*, Civ. No. 23-21138, 2024 WL 580154, at *2 n.4 (D.N.J. Feb. 13, 2024) (citation modified). Damages resulted from that nonpayment. *Wingate Inns Int'l, Inc. v. Universal Hosp.*

*Sols., LLC*, 750 F. Supp. 3d 422, 428 (D.N.J. 2024) ("Nonpayment of money that is owed is damaging."). Finally, Defendant performed its contractual obligations by financing Plaintiff's purchase of the Vehicle. (ECF No. 51 ¶ 4; ECF No. 53-1 ¶ 4 (agreeing that Plaintiff financed her purchase of the Vehicle using financing provided by Defendant).) *See US Bank NA as Tr. for Registered Holders of J.P. Morgan Chase Com. Mortg. Sec. Corp. v. B R Penn Realty Owner LP*, 137 F.4th 104, 110 (3d Cir. 2025) ("The parties form a contract: the lender will provide a sum of money at a certain interest rate, and the borrower is obligated to pay it back, in full and on time."). As there are no disputes of material fact regarding the elements of Defendant's breach of contract counterclaim, Defendant is entitled to summary judgment on this claim.

Regarding damages, Defendant seeks "the outstanding balance of $24,156.47 as of March 4, 2026, plus late[] fees and charges and interest accruing at the contractual rate of 7.74% from August 2024 through present." (ECF No. 49 at 33.) Defendant also seeks attorneys' fees, but states that it "intends to move separately to recover its fees incurred after the Court has ruled on this motion." (*Id.* at 33 n.1.) Defendant's submissions are not sufficiently detailed to support its calculation of damages. "In breach of contract claims, courts 'most often' award compensatory damages, which 'put the innocent party into the position he or she would have achieved had the contract been completed.'" *Way v. Arete Automobili Corp.*, Civ. No. 20-13646, 2022 WL 180327, at *9 (D.N.J. Jan. 20, 2022) (quoting *Totaro, Duffy, Cannova & Co., L.L.C. v. Lane, Middleton & Co., L.L.C.*, 921 A.2d 1100, 1107 (N.J. 2007)). Defendant alleges that $24,156.47 is the "outstanding balance" of the RISC, (ECF No. 49 at 8, 33, 34, 36), but Defendant's Motion states that this balance was calculated as of March 4, 2026, (*id.* at 33), while the Declaration offered in support asserts that the balance was calculated as of March 13, 2026, (ECF No. 51-1 ¶ 35), and Defendant's counterclaim asserts damages of $23,056.22 as of July 8, 2025, (ECF No. 26 at 9).

Defendant does not explain the significance of these March dates nor provides a more detailed accounting of the requested $24,156.47 in damages. As such, the Court reserves judgment as to the amount of damages and directs Defendant to provide supplemental briefing providing more detail on the calculation of damages flowing from Plaintiff's breach of contract. *See, e.g.*, *Kingsly Compression, Inc. v. Mountain V Oil & Gas, Inc.*, 745 F. Supp. 2d 628, 636-37 (W.D. Pa. 2010) (granting summary judgment but ordering supplemental briefing on the damages calculation).

Regarding Defendant's request for pre-judgment interest, where a court has supplemental jurisdiction over a claim, state law applies in determining pre-judgment interest as it would in a diversity action. *Bardell v. Banyan Del., LLC*, Civ. No. 23-148, 2024 WL 5076030, at *6 (D. Del. Dec. 11, 2024). In this matter, New Jersey law would apply to calculate pre-judgment interest, and "New Jersey law dictates that the allowance of prejudgment interest is a matter of discretion for the trial court.'" *Panebianco*, 2025 WL 1284647, at *3 (citation modified). Defendant asks for "interest accruing at the contractual rate of 7.74% from August 2024 through present," (ECF No. 49 at 33), but also refers to the interest requested as "post-judgment interest"[17] throughout its brief, (*id.* at 8, 34, 36). As such, the Court also reserves judgment on Defendant's request for pre-judgment interest and directs Defendant to also clarify its request in its supplemental briefing.

### *2. Replevin*

Under New Jersey law, "[a] person seeking recovery of goods wrongly held by another may bring an action for replevin" and the court shall enter an order granting possession of the same "[i]f the person establishes the cause of action." N.J. Stat. Ann. § 2B:50-1. "To state a replevin

---

[17] The Court notes unlike pre-judgment interest, "post-judgment interest in federal court . . . is governed by 28 U.S.C. § 1961, even in matters arising under diversity jurisdiction." *Werremeyer v. Shinewide Shoes, Ltd.*, Civ. No. 19-10228, 2023 WL 8878129, at *2 (D.N.J. Dec. 22, 2023) (citation modified).

claim, the plaintiff must establish 'absolute ownership and right to the possession' of the subject property." *ECC Enter. Ltd. v. TD Bank, N.A.*, Civ. No. 23-03760, 2024 WL 1623059, at *1 n.2 (D.N.J. Apr. 15, 2024) (quoting *Christie v. Nat'l Inst. for Newman Stud.*, Civ. No. 16-6572, 2019 WL 1916204, at *16 (D.N.J. Apr. 30, 2019)). Defendant argues that under the second RISC it is entitled to possession of the Vehicle given Plaintiff's default. (ECF No. 49 at 35.) The Court agrees. The second RISC is a valid contract, (*See supra* Part III.D.1), and it is undisputed that it provides for repossession upon default, (ECF No. 51 ¶¶ 9-11; ECF No. 53-1 ¶¶ 9-11). As discussed previously, Plaintiff is in default for failing to make payments after August 2024. (*See supra* Part III.D.1.) Because there is no genuine dispute that Defendant has a right to the possession of the Vehicle, Defendant is entitled to summary judgment on its claim for replevin.

## IV. CONCLUSION

For the foregoing reasons, and other good cause shown, Defendant's Motion for Summary Judgment, (ECF No. 48) is **GRANTED**. An appropriate Order follows.

Dated: October 19, 2026

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE